ROMIG v. THE CITY OF LAFAYETTE.

CITY.—*Street Improvement.*—*Precept.*—*Appeal.*—On an appeal from a precept issued for the collection of an assessment for a street improvement in a city incorporated under the general act of 1867, it is a sufficient answer, that at the date of the estimate on which such precept was issued the person taking the appeal owned, and has since owned, only a portion of the lot against which the precept is directed, which portion does not adjoin the street improved.

SAME.—Where an assessment for a street improvement has been made upon a lot as being owned by two persons jointly, an answer on an appeal by one of such persons from a precept issued for the collection of such assessment, alleging that said persons were, at the date of the estimate, and still are, owners in severalty of distinct parts of the lot, presents a good defense.

APPEAL from the Tippecanoe Common Pleas.

On the 22d day of April, 1867, the common council of the city of Lafayette, by a vote of over two-thirds of all its members, adopted an order for the improvement of Fifth street in said city, by grading, graveling, guttering, &c., from Romig street to Maiden Lane. On the 1st of July, 1867, the work was contracted to John R. O'Mara. The east end of lot fifty-nine, in Romig's addition to the city, bounds, or fronts, fifty feet on that part of Fifth street so contracted to be improved. The work was completed according to contract, and a final estimate was made thereof, by the city engineer, on the 25th of November, 1867.

Lot fifty-nine was assessed under the contract, as belonging to Solomon Romig and John Smith, with one hundred and twenty-seven dollars and eighty-eight cents. On the 23d of December, 1867, on the filing of an affidavit by O'Mara that the whole amount so asssessed against Romig and Smith, as the owners of said lot fifty-nine, was due and unpaid, the city council ordered that a precept be issued to the city treasurer, commanding him to make said sum by a sale of said lot; and on the day following a precept was issued to the city treasurer, pursuant to said order. From

the precept so issued Romig appealed and filed an answer in the common pleas in two paragraphs.

The first is a general denial. The second alleges, that on the 1st day of April, 1852, the New Albany and Salem Railroad Company, with the permission and consent of said city, located the bed and track of their railroad through said city, and in so doing passed over said lot fifty-nine, and appropriated, in accordance with law, the following portion thereof, to wit: "Beginning fifty feet west of the south-east corner of said lot, on the south line thereof, running thence north-east to the north line of said lot, forty feet west of the north-east corner of said lot, thence west on said lot twenty feet, thence south-west to the south line of said lot seventy feet west of the south-east corner of said lot, thence east on said south line to the place of beginning, containing a strip twenty feet wide across said lot as aforesaid; that said railroad company in constructing their road-bed, excavated and dug out the road-bed to the depth of ten feet, making a steep bluff bank on either side of said road, so that there is no means of passing from that portion of said lot west of said railroad and bordering on said Fifth street the entire width of said lot; and that said railroad has ever since said location, and does yet own and occupy said part of said lot so taken by them for their road-bed and track; and that one John Smith, on the 27th day of April, A. D. 1867, was and still is the owner of all that portion of said lot east of said railroad, and bordering the entire width of said lot on said Fifth street; and that this defendant, is now, and was long before the location of said railroad, and the said purchase of the said John Smith of said portion of said lot so owned by him, the owner of that portion of said lot west of said railroad, no part of which borders on, or is accessible to or from said Fifth street, and is separated from said Fifth street by said part of said lot owned by said John Smith and said part of said lot owned by said railroad, and the only means of access to, or egress from, said parts of said lot owned by this defendant is by

the alley on the rear and west end of said lot; and the said improvement of said Fifth street is of no benefit or advantage in any way to that part of said lot so owned by this defendant. Wherefore, he says that said plaintiff has no right to assess said part of said lot so owned by this defendant, for said improvement, or sell it to pay the same."

A demurrer was sustained to the second paragraph of the answer, to which Romig excepted.

There was a trial by the court, which resulted in a finding and judgment, that the whole of the lot was liable to be sold to pay the amount of said assessment, interest, and costs; but the court ordered that so much of said lot as lies east of the railroad should be first sold, and if it failed to sell for the amount required, then that part occupied by the railroad should be next sold; and if a deficit still remained it should be made by a sale of the remainder of the lot, owned by Romig.

Elliott, J.—The only question in the case arises on the ruling of the court in sustaining the demurrer to the second paragraph of the appellant's answer.

The 69th section of the act of 1867, for the incorporation of cities, (Acts 1867, p. 66) provides, that "the owners of lots bordering on such streets or alleys, or the part thereof to be improved, shall be liable to the contractors for their proportion of the costs, in the ratio of the first (front) line of lots owned by them to the whole improved line," &c.

In the case of *The City of New Albany* v. *Cook*, 29 Ind. 220, a lot, bordering on that part of the street improved, had been subdivided before the order for the improvement was made, and the subdivisions were owned by different persons. No part of one of the subdivisions bordered on the street improved. And it was held, after a careful consideration of the question, that the owner of the subdivision bordering on the street was alone liable for the assessment. That decision was made under the act of 1865; but

the 69th section of the act of 1867 is a literal copy of section 66 of the former act. See Acts 1865, Spec. Sess., p. 30.

But it is insisted on the part of the appellee, that the appellant was the owner of the whole lot on the 22d of April, 1867, when the order for the improvement was made, and that the fact that Smith became the owner of all that part of it bordering on the street and extending back to the railroad, on the 27th of April, 1867, did not exempt the residue of the lot from liability for the improvement; and reference is made to section 71 of the act of 1867.

It will be observed that the second paragraph of the answer does not allege, or admit, that the appellant was the owner of that part of the lot between the street and the railroad at the time the order was made for the improvement. It alleges that Smith was the owner of that part of the lot on the 27th of April, 1867, and still is such owner; but whether he became the owner on the day named, or before that time, does not appear; nor can it be inferred from the allegation that he purchased it of the appellant. But aside from this, and assuming that the appellant was the owner of the whole lot until the 27th of April, 1867, and that he then sold all that part of it bordering on the street and extending back to the railroad, and how stands the question?

The 71st section of the act of 1867, referred to by the appellant, after providing for an appeal from the precept in such cases, proceeds thus: "If no such appeal shall have been taken aforesaid, then it shall be the duty of such treasurer, within ten days after the expiration of said twenty days, to lay said precept upon the lot or land therein described, and to sell the same, or so much thereof as may be necessary to pay such assessments with costs and charges; but before any such sale, he shall give notice of the time and place thereof by advertising the same for three weeks successively in a newspaper printed and published nearest to such lot or land, if any such be printed and published within the

county wherein such city is situated, and by posting up written or printed notices thereof in at least three public places in said city, and every such sale shall be by public auction, and upon or near the premises, or in the city court rooms of said city, in the discretion of said treasurer, and no sale of said lot or land previous or subsequent to the date of such estimates, and subsequent to the date of such petition, or determination of the common council to make such improvement without petition, shall invalidate or affect any sale thereof in pursuance of this act."

We do not understand this provision as fixing the liability for such assessments upon those who may own the lots, or parts thereof, bordering on the improvement, at the date of the petition, or order of the common council for such improvement, or as creating a lien from that time upon the entire lot for the assessment, if the whole should then be owned by the same person.

The contractor, in whose favor the estimate is made, has no interest in the matter until he contracts to make the improvement, and it would seem absurd to suppose that it was intended to create a lien in his favor before he could have any interest in the subject-matter, or had assumed any liability whatever. There might be propriety in providing that no change in the ownership of a lot bordering on the improvement, or of any part thereof, after the work is let, should lessen the security of the contractor for the payment of the assessments.

But we do not think the provision cited has any relation to the subject of such liens.

Section 70 provides for estimates from time to time as the work progresses, and the payment thereof to the contractor by those liable therefor, and declares that such estimates shall be a lien upon the ground upon which they are assessed to the same extent that taxes are a lien. The assessments are required to be made against the owners severally, in proportion to the number of front feet owned by each bordering on the improvement; and then it is provided

by section 71 that if any owner against whom an assessment is made shall fail to pay the same for the space of twenty days after the date of the estimate, a precept shall be ordered, on the affidavit of the contractor, to enforce the payment thereof by a levy and sale of the lot or ground on which the assessment is made. The precept is required to state the name of the person against whom the assessment is made, the description of the lot or land on which it is made, the amount of such assessment, and the date of the estimate. An appeal is then authorized by the owner of the property, from the precept, to the court of common pleas, but if an appeal is not taken within the time limited, or the assessment paid, the treasurer is required to proceed and sell the property, and then follows the provision relied on by the appellee. The section makes an ample provision for the litigation of all questions arising in the case subsequent to the date of the contract, by a party whose lot or land is assessed, by an appeal from the precept; but if such appeal is not taken, and the property is sold, then it is declared by the clause referred to, that the purchaser's title shall not be invalidated or affected by any sale of the property by the owner after the date when the improvement is determined upon. This is not a question arising after a sale, but upon appeal before sale, and the provision referred to has no application to it.

An objection is urged to the sufficiency of the transcript—which, under the statute, occupies the relation of a complaint—on the ground that it shows that the assessment on the lot was made jointly against the appellant and Smith, instead of a separate assessment against each. This question is not presented upon the face of the transcript, and is not therefore reached by the demurrer or by an assignment of error. The assessment is made upon the whole lot as being owned by the appellant and Smith. This must be understood as asserting a joint ownership, as tenants in common, and if so, the assessment would be properly made against the owners jointly. The answer however avers that

they were owners in severalty of distinct parts of the lot, and would be good for that reason alone.

We think the court erred in sustaining the demurrer, and the judgment must therefore be reversed.

Judgment reversed, with costs, and the cause remanded, with directions to the court below to overrule the demurrer to the second paragraph of the answer, and for further proceedings not inconsistent herewith.

*M. Jones, J. L. Miller,* and *S. T. Stallard,* for appellant.
*W. C. L. Taylor,* for appellee.